SCHOOL DISTRICT NUMBER 1, *Appellant*, v. SCHOOL DISTRICT NUMBER 4.

1. **School Districts**: CHANGE OF BOUNDARIES: STATUTE. A vote under Revised Statutes, section 7023, in relation to forming a new school district, or changing the boundaries of existing ones, cannot have the effect to form or change a district, unless the proposition voted on specifies the boundaries of the districts as sought to be changed or established.

2. ——— : ——— : ———. The notices required by the statute (R. S., sec. 7023) to be posted of such desired change must also specify the changes proposed in the school district boundaries.

3. ——— : ——— : COUNTY COMMISSIONER. The power of the county school commissioner, where the vote by the districts is not unanimous on the proposed change, is merely to decide on the proposition already voted on. He cannot go beyond this and establish boundaries different from those specified in the proposition voted on.

4. ——— : ———. Revised Statutes, section 7024, *et seq.*, relating to the raising of a building fund in case of the formation of a new district, has no application to a case where the boundary lines between districts already organized are changed, and a portion of the territory of one is detached from it.

*Appeal from Cass Circuit Court.*—HON. N. M. GIVAN, Judge.

AFFIRMED.

*Wooldridge & Daniel* for appellant.

(1) A demurrer to the evidence admits all facts which the evidence introduced by the adverse party tends to prove, or of which there is any evidence, however slight, and all inferences which logically and reasonably can be drawn from the evidence. *Buesching v. Gaslight Co.*, 73 Mo. 220–31; *Frick v. Railroad*, 75 Mo. 595, 601; *Noeninger v. Vogt*, 88 Mo. 589–92; *Railroad v. Foster*, 2 West. Rep. 299. (2) The petition was pre-

sented to the directors of all the districts. Notice is proved to have been given in district number 1, and elections were held in districts 1, 2, 3, and 8. District number 4 (defendant) did not hold an election, but disregarded the petition. The presumption is, that in the districts voting notice was given as directed by statute. *Brant v. Brock*, 4 New Eng. Rep. 716. (3) District number 1 (plaintiff) voted in favor·of the change, and the other districts voting voted against it. The matter was referred to the county commissioner, who informed himself as to the necessities of the situation, and transmitted his decision to the various district clerks, and his decision is final. R. S., sec. 2023. (4) Plaintiff and defendant and all the other districts of the township adopted the boundaries respectively as, established by the county commissioner, and all have asserted and exercised corporate powers over the territory embraced in these boundaries, and made and filed their respective enumeration lists and lists of taxpayers with the clerk of the county court, with district boundaries as thus established by said commissioner, and have acquiesced in and adapted their action to these boundaries. R. S., secs. 7049–50. To unsettle the action of the commissioner and the boundaries so adopted by the districts, would produce great public inconvenience and confusion, and also injury and private damage. Can the legality of the organization of the districts, with their boundaries so established and accepted, be attacked collaterally? *Parman v. School Directors*, 49 Mich. 63; *Stockle v. Lilsbee*, 41 Mich. 615; *Rice v. McClellan*, 58 Mo. 116, 121–2; *State v. Evans*, 83 Mo. 319–22; *Stamper v. Roberts*, 90 Mo. 683; *State ex rel.- v. Young*, 84 Mo. 90. (5) If there were irregularities in the changes of the boundaries of the districts, they were cured by the adoption by the various districts of the changes made. *Rice v. McClellan*, 58 Mo. 116; *Clement v. Everett*, 29 Mich. 19, 22.

*Railey & Burney* for respondent.

(1) The petition to the directors was insufficient, in not setting out the changes desired to be made in the school districts. R. S., sec. 7023; *Stamper v. Roberts*, 90 Mo. 683; *State ex rel. v. Riley*, 85 Mo. 156; *Mason v. Kennedy*, 89 Mo. 23. (2) The giving of the notice to the directors was a jurisdictional fact. *State ex rel. v. Young*, 84 Mo. 90. (3) Some of the districts altogether failed to vote, and there was nothing on which the commissioner could act. R. S., sec. 7023. (4) The powers and duties of the directors, as well as the corporators, are prescribed and limited by statute. The directors cannot change the boundaries of districts; if changed, it must be done by vote of the citizens at an annual meeting. It follows as a necessary consequence that the directors, not having power to make the change in the first instance, cannot make such change indirectly by estoppel or ratification. *Buchanan v. School District*, 25 Mo. App. 85; *Johnson v. School District*, 67 Mo. 319; *State to use v. Tiedeman*, 69 Mo. 515; *Fluty v. School District*, 4 S. W. Rep. 278; *Smith v. Board of Education*, 58 Mo. 297, 301.

BRACE, J.—Prior to the annual school meetings in April, 1882, township 45, range 31, in Cass county, had been organized into school districts. Plaintiff and defendant were districts in said township. The other districts, numbers 2, 3, 4, and 8, the remaining territory not included in these districts, formed parts of districts in adjoining townships. On the fourteenth of March, 1882, a copy of the following petition was delivered to the president and clerk of the board of directors of said district numbered 4:

"March 14, 1882.
"To the Hon. Boards of Directors of School Districts Nos. 1, 2, 3, 4, 5, Township 45, Range 31:
"The undersigned, your petitioners and taxpayers

in District No. 1, Township 45, Range 31, would respect-
fully represent that the school districts in Peculiar town-
ship, as at present constituted, fail to accomplish the
objects for which such districts are usually organized.
To the end, therefore, that the whole township and the
patrons of the public schools may be better accommo-
dated, we desire that the township be reorganized into
new school districts, and request your Board to take
such action as the law directs in the premises."

Signed by James P. Taylor and twelve others, and
a copy thereof was presented to all the other districts in
said township, but at what time does not appear. There
was no evidence tending to prove that any notices were
posted in any of the districts of said township of said
proposed reorganization of said township into new
school districts, except in district numbered 1. In
regard to that district, one witness, J. P. Taylor, testi-
fied: "I put up in district number 1 notices of the
election on the question of reorganizing the districts
*according to the petition* twenty days before the first
Tuesday in April, 1882."

There was no evidence tending to show that any
vote was taken on the proposition in district number
4, or in any of the outlying districts at the annual
meetings held on the last-mentioned date. District
number 1 voted in favor of the proposition, and districts
numbers 2, 3, and 8, voted against the proposition.
After the annual meetings in 1882, the matter of redis-
tricting the township was referred to John T. Weathers,
who was then, and afterwards until the trial of this case
in the circuit court, school commissioner of Cass county;
and he, in March, 1883, redistricted the township and
determined the boundaries of the various districts, and
thereafter, but at what date does not appear, made a
plat of the township showing the boundaries of the
school districts therein, as thus changed by him, and
sent the same to the clerks of the several boards of

directors in the township. It does not appear that such plat was entered upon the records of any of the districts, but at some time thereafter the same was filed in the office of the county clerk. By this reorganization the commissioner undertook to establish one entirely new district (number 10), and to change the boundaries of every other district in the township, and in making this change, detached from the territory of district number 4, defendant herein, and added to that of district number 1, plaintiff herein, an area of nine hundred and sixty acres. The enumeration list and list of taxpayers made by the boards of directors of all the districts in the township, for the year 1884, and the levy by the county court of Cass county for school taxes for said year, were made upon said districts as laid off by said Weathers, commissioner.

Prior to this redistricting by the school commissioner, a tax had been levied for building a schoolhouse by district number 1, which was collected and applied in payment for such building in said district after such redistricting. On the tenth of December, 1883, the board of directors of district number 1, appointed one Willis Taylor to proceed with some person to be appointed by district number 4, to determine the valuation of the school property of said district number 1, and of the proportion thereof of those in the territory detached from said district and attached to district number 4, by the school commissioner. Taylor notified said defendant district of his appointment, but the defendant refused to appoint any person to act with him in the valuation of said property; and on the sixteenth of March, 1885, plaintiff commenced this proceeding by mandamus in the circuit court of Cass county to compel the defendant to make such appointment. The issuing of an alternative writ was waived; the defendant answered the petition, denying every

allegation thereof, and at the close of plaintiff's evidence, demurred thereto, which demurrer was sustained by the court, the peremptory writ refused, and judgment rendered in favor of defendant for costs, from which plaintiff appeals.

Each organized school district in the state is a body corporate, whose corporate life is of unlimited duration (R. S., 1879, sec. 7021), and no power has been vested by law, either in the voters of such district, or of all the districts in the township, or in the boards of directors of such districts, or in the school commissioner of the county, to deprive them of their corporate existence, and in their stead create new districts. The extent of the power of the voters in such organized districts, and of the county school commissioner, when his power is called into action, is to form a new district, composed of portions of two or more organized districts, and to change the boundary lines of organized districts. This power is conferred and defined by Revised Statutes, section 7023, which is as follows: "Whenever it may be deemed necessary to form a new district, composed of portions of two or more districts, or to change the boundary lines of any district, it shall be the duty of the directors of the districts affected, upon the reception of a petition desiring such change and signed by ten qualified voters residing in either of the districts affected, to post a notice of such desired change in at least three public places in each district interested twenty days prior to the time of the annual meeting. And the voters when assembled shall decide such question by majority vote. If the assent to such formation be given by all the annual meetings of the various districts thus voting, the district shall be deemed formed, or the boundary lines thus changed from that date. But if a part of the districts affected vote in favor of, and a part against, such change, the matter shall be referred to the county commissioner for final decision,

who shall proceed to inform himself of the necessity of the proposed change, and his decision thereon shall be final, and shall be transmitted to the various district clerks and by them be entered upon the records of the various districts.''

A moment's consideration of the provisions of the foregoing section will satisfy the mind, that the proposition upon which the voters are to be called upon to vote must be such an one as, if voted for by a majority at all the annual·meetings of the districts interested, will have the effect, by the force of such vote alone, of creating the new district voted for, with defined boundaries in the one case, or of making definite changes in the boundaries of the then organized districts. In other words the vote cannot have the effect of forming a new district unless the proposition fixes the boundaries of that district, nor of changing those of old districts unless it is specified therein where those boundaries will be should the proposition be adopted. A vote upon a general proposition to form a new district, or to change the boundaries of old districts can have no force or effect whatever. The voters must be informed of the change that may be effected in the existing boundaries of their district by the vote which they are called upon to give, and they must vote for or against such proposed change. In order that they may be thus informed the law requires that, twenty days prior to the time of the annual meeting, notice of such desired change shall be posted in at least three public places in each district interested ; these notices must necessarily be as comprehensive as the proposition to be voted on, and must inform the voter what change it is proposed to make in the boundaries of his district; this is the one thing that he is personally interested in knowing. *Mason v. Kennedy*, 89 Mo. 22. And unless the notice is such as to give this information it is no notice at all. It is not sufficient that the voters be notified that, at the annual

meeting, they will be called upon to vote upon the question whether or not *a* new district shall be formed, and *a* change made in the boundary lines of the old districts, they must be notified of *the* change proposed; of what territory the new district is to be composed, of what change is to be made in the boundaries of the old ones.

When the voters, being thus notified, have voted upon the question whether the proposed new district be formed and the boundaries of the old district be changed as proposed, and part of the districts have voted against such change, "the matter shall be referred to the county commissioner for final decision, who shall proceed to inform himself of the necessity of *the proposed change*, and his decision thereon shall be final"; that is, final upon the question referred to him, that question being whether or not the new district shall be formed and the boundary lines of the old districts changed as specified in the notice, and voted on at the annual meetings. The law gives the commissioner no power either to form new districts or to change the boundaries of old ones; his only power is to decide the question of the proposed change as it was voted on,— and if he decides the question in the affirmative, and transmits his decision, the new district is formed and the boundary lines are changed just as they would have been if the assent to such formation and change had been given by the majority vote of all the annual meetings. *State ex rel. v. Riley*, 85 Mo. 156.

The facts in this case show a failure to comply with the law in every particular and along the whole line. The petition did not show the changes desired in the boundaries of the organized districts, or of what territory the new district was to be composed. No notices were posted in any of the districts except in number 1, and that followed the petition and gave no notice of anything. There was no vote taken on any proposition

to form a new district out of specified territory, or to make any specified changes in the boundaries of the organized districts, consequently there was nothing to be referred to the commissioner and he had nothing before him to decide. In fact the whole case resolves itself into this: that the school commissioner, without any authority of law whatever, undertook to create a new district, and to change the boundary lines of all the organized districts in the township, and in doing so, undertook to change the boundary line beween plaintiff and defendant and to detach from the defendant district nine hundred and sixty acres of its area, and attach the same to the plaintiff district, which he had no more right to do than had any other citizen of Cass county. The board of directors of these districts had no authority, either directly or indirectly, to change such boundary line, and no act of theirs could impart any validity to the void act of the commissioner. There is no question of laches or estoppel in the case, and even if such boundary line had been legally changed this action could not be maintained. The law gives the plaintiff no such right as it seeks to enforce. The law does provide, where a *new district* is formed which shall include within its limits those who have theretofore aided in the erection of a schoolhouse in the district from which they have been detached, that the school property of the old district shall be valued, and a tax levied upon the property within the original limits of such old district in a sum which shall bear the same proportion to the entire value of such school property as the assessed valuation of the taxable property in the detatched portion bears to the total valuation of the property located in the old original district, which when collected shall be paid to the county treasurer and by him placed to the credit of the *building fund of the new district.* R. S. 1879, secs. 7024, 7025, 7026. This law has no application to a case where the boundary lines between

two old organized districts are changed and a portion of the territory of one is detached from it and added to the other; the law goes upon the presumption that each of the old districts had a schoolhouse, whilst the new district being without, it is necessary that a fund should be raised for the purpose of building one.

The judgment of the circuit court is affirmed. All concur, except Ray, J., absent.